UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-24045-CIV-MORENO

EDDIE SIERRA,

    Plaintiff,

vs.

CITY OF HALLANDALE BEACH,
FLORIDA,

    Defendant.
_____/

## ORDER DISMISSING COMPLAINT

### Background

Plaintiff Eddie Sierra filed claims against Defendant City of Hallandale Beach for violations of Title II of the Americans with Disabilities Act (Count I), 42 U.SC. § 12132, and Section 505 of the Rehabilitation Act of 1973 (Count II), 29 U.S.C. § 794, for failure to provide him with closed captions, as required by the acts, for the video content on its website. Plaintiff is a disabled individual in that he is deaf. To redress his injuries, Plaintiff seeks (1) a declaratory judgment that Defendant was in violation of Title II of the Americans with Disabilities Act; (2) a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) requiring that Defendant's website be fully accessible to hearing-impaired individuals; and (3) damages to Plaintiff as compensation for Defendant's alleged deliberate indifference in violating Plaintiff's rights under federal law. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that the Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust his administrative remedies pursuant to the Twenty-First Century Communications and Video Accessibility Act of 2010.

The Court finds that the Plaintiff has failed to exhaust his administrative remedies and thus dismisses the Complaint without prejudice to refile upon completion of the Federal Communication's review process.

## Analysis

The Twenty-First Century Communications and Video Accessibility Act of 2010 provides that the Federal Communications Commission has exclusive jurisdiction over closed captioning requirements for certain video programming available over the internet. 47 U.S.C. § 613(c)(2); 47 C.F.R §79.4(f) ("The [Federal Communications] Commission shall have exclusive jurisdiction with respect to any complaint under this section."). The Twenty-First Century Communications and Video Accessibility Act states in relevant part:

> Not later than 6 months after the submission of the Report to the [Federal Communications] Commission required by subsection (e)(1) of the [Act], the [Federal Communications] Commission shall revise its regulations to require the provision of closed captioning on video programming delivered using Internet protocol that was published or exhibited on television after the effective date of such regulations.

Effective April 30, 2012, the Federal Communications Commission implemented new regulations, one of which imposes closed captioning requirements on "[a]ll nonexempt full-length video programming delivered using Internet protocol . . . **if the programming is published or exhibited on television in the United States with captions** . . ." 47 C. F. R. §79.4(b)(1) (emphasis added). The Federal Communications Commission has defined "full-length video programming" to include: "video programming that appears on television and is distributed to end users, substantially in its entirety, via Internet protocol, excluding video clips or outtakes. *Id.* at § 79.4(a)(2).

The parties agree that Plaintiff has not pled a claim for a violation of the Twenty-First Century Communications and Video Accessibility Act or any of its regulations. Instead, Plaintiff

2

alleges violations of the Americans with Disabilities and Rehabilitation Acts. Thus, the crux of Defendant's argument is that the Court lacks subject matter jurisdiction, because Plaintiff has not complied with a condition precedent necessary for his claims – filing a complaint with the Federal Communications Commission as required by the Twenty-First Century Communications and Video Accessibility Act. Due to the Plaintiff's failure to comply with the Act's administrative requirements, Defendant submits the Complaint should be dismissed. Plaintiff counters that the video content pertaining to the allegations in the Complaint are not covered under that Act, because the video content was not published or exhibited on television with closed captions, before being streamed on the internet.

The Court's first obligation is to determine whether Plaintiff's claims fall within the scope of the Twenty-First Century Communications and Video Accessibility Act. Defendant relies on *Sierra v. School Bd. of Broward Cty.*, No. 16-CV-63021, 2017 WL 1423956, at *1 (S.D. Fla. Apr. 20, 2017) (Bloom, J.), where Judge Bloom dismissed this same Plaintiff's claims under Title II of the Americans with Disabilities Act and Section 505 of the Rehabilitation Act for failure to exhaust administrative remedies pursuant to the Twenty-First Century Communications and Video Accessibility Act. In *Sierra*, this Plaintiff alleged that the defendant school board denied him "access to [the school board's] archived video for streaming on demand and live streaming of [the] School Board meetings on the basis of his disability." *Id.* Plaintiff also alleged that the school board's Facebook and Twitter social networking sites failed to provide closed captioning for its video and audio content. *Id.* As part of its "factual attack" to subject matter jurisdiction, the school board presented a declaration that explained that the school board's meetings – the same ones the plaintiff sought to observe – were aired via live web stream

3

on the school district's internal broadcast system, later broadcasted on television, and finally archived on the school board's website. *Id.* at *3.

Relying on the fact that the school board televised its meetings, Judge Bloom found that the video content fell within the purview of the Twenty-First Century Communications and Video Accessibility Act. *Id.* Once the Court made that finding, it dismissed the complaint, because by enacting the Act, "Congress called upon the [Federal Communications Commission's] expertise and vested th[e] agency with exclusive jurisdiction to address any complaints involving a video programmer's compliance with the [Act's] closed-captioning requirements." *Id.* at *4. "To find otherwise would render the exclusivity clause of the [Act] meaningless as plaintiffs would seek to avoid the [Federal Communications Commission] complaint procedure all together by filing suit under the [Americans with Disabilities Act] and Section 505 [of the Rehabilitation Act]." *Id.* Dismissing the complaint without prejudice, so that the plaintiff could pursue his administrative remedies under the Twenty-First Century Communications and Video Accessibility Act, only delayed the plaintiff's prosecution of his claims until the administrative remedies were exhausted, thereby "ensur[ing] that the [Act's] intended purpose is accomplished while preserving Plaintiff's rights under the [Americans with Disabilities Act] and Section 505 [of the Rehabilitation Act]." *Id.*

Plaintiff distinguishes *Sierra* by arguing that the video content in this Complaint is not covered under the Twenty-First Century Communications and Video Accessibility Act, because the video content was not published or exhibited on television, with closed captions, before being streamed on the internet. The Complaint is replete with broad references to "Defendant's various archived video for streaming on demand, as located throughout its website", D.E. 1 at ¶ 1; "[the Defendant's] archived online video content", *Id.* at ¶ 2; "video content on Defendant's website

4

and Facebook page", *Id.* at ¶ 12. Attached to the Complaint as Exhibit A are a myriad of screenshots and links of videos that Plaintiff alleges are not closed captioned. The videos include: "City Commission, Workshop, Hallandale Beach Community Redevelopment Agency meetings from May 2014 to May 2016" and "videos compromising the Hallandale Beach Tour Book which features videos coverings topics such as quality of life; education; parks; tourism and things to do; business and industry; Chamber of Commerce; economic development; community organization; and leaders in the community." D.E. 1 at ¶ 19. "There are additional videos included on a URL at www.HallandaleBeach360.net." *Id.* These videos show **the City Council** discussing and voting on zoning applications, procurement contracts, tax rates, cultural activities, tourism; and business and industry." *Id.* (emphasis added).

The only screenshot in Exhibit A that depicts a visible URL of a city website run by Defendant is on page six where the URL appears to be www.hallandalebeachfl.gov, and lists several dates in 2014 that seem hyperlinked. Notwithstanding page six, there is no affirmative indication, whatsoever, that any of the videos or websites listed in Exhibit A are government websites run by Defendant. To the extent that the videos alleged in the Complaint are not videos on Defendant's government website, Defendant is not the proper party to this suit.

Thus, having determined that the Complaint's shoddy allegations only allege that Defendant's city-business related meetings violate the Americans with Disabilities and Rehabilitation Acts, the Court now turns to whether those meetings fall under the expertise of the Federal Communications Commission. To support its "factual attack," which challenges the existence of subject matter jurisdiction based on matters outside the pleadings, Defendant presented extrinsic evidence by way of the Declaration of Mario Bataille, the City Clerk for the City of Hallandale Beach. In his declaration, Mr. Bataille explains that "[Defendant's]

5

commission meetings are exhibited on television in the United States with captions . . . simultaneously air live via web stream with captions . . . [and] become[s] available for viewing on [Defendant's] website." *See* D.E. 14, Exhibit 1 at ¶¶ 3-5. Based on the foregoing, the Court finds that the video content described in the Complaint falls within the purview of the Twenty-First Century Communications and Video Accessibility Act, and dismissal is warranted, as the Defendant's meetings at issue are televised in the United States with captions.

Other courts have similarly required dismissal of a complaint for failure to exhaust administrative remedies in substantially comparable scenarios. *See Johnson v. Hairston*, No. 3:06-CV-812-WKW, 2007 WL 748479, at *4 (M.D. Ala. Mar. 8, 2007) (dismissing the plaintiff's complaint under the Federal Tort Claims Act and Telecommunications Act of 1996 for failing to provide closed captioning because the Federal Communications Commission "has exclusive jurisdiction with respect to any closed captioning complaints"); *Zulauf v. Kentucky Educ. Television*, 28 F. Supp. 2d 1022 (E.D. Ky. 1998) (dismissing the plaintiff's complaint for failure to exhaust administrative remedies under the Video Programming Accessibility Act of 1996, the precursor to the Twenty-First Century Communications and Video Accessibility Act, that gave the Federal Communications Commission exclusive jurisdiction over issues surrounding closed captioning).

## Conclusion

Having found that the Twenty-First Century Communications and Video Accessibility Act applies, the Complaint is **DISMISSED WITHOUT PREJUDICE**, because Plaintiff has failed to exhaust his administrative remedies. Upon completion of the Federal Communications Commission's review process, Plaintiff is free to refile his claims with this Court as necessary. This outcome ensures that the Act's intended purpose is accomplished while preserving Plaintiff's rights under the Americans with Disabilities and Rehabilitation Acts. Therefore, it is

**ADJUDGED** that the Motion to Dismiss is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 25 of January 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record